IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| DINA M. BASCUE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 21-06122-CV-SJ-WBG |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER AND OPINION AFFIRMING THE ACTING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS**

Pending is Plaintiff Dina M. Bascue's appeal of Defendant Acting Commissioner of Social Security's final decision denying her application for disability insurance benefits. After carefully reviewing the record and the parties' arguments, the Court **AFFIRMS** the Acting Commissioner's decision.

I. BACKGROUND

Plaintiff was born in 1969 and has at least a high school education. R. at 26, 40, 193. She previously worked as a real estate agent, sales clerk, office manager, accounts receivable clerk, benefits clerk, collections clerk, and customer service representative. R. at 26, 41-47, 63-64. In April 2019, Plaintiff protectively filed an application for disability insurance benefits alleging a disability onset date of September 1, 2017. R. at 15, 193-94. Her application was denied, and she requested a hearing before an administrative law judge ("ALJ"). R. at 91, 119-23, 125.

In September 2020, ALJ Scot Gulick conducted a telephone hearing. R. at 36-70. Thereafter, on December 16, 2020, the ALJ issued his decision wherein he found Plaintiff suffers from the following severe impairments: fibromyalgia, degenerative disc disease of the lumbar spine with radiculopathy status post hemilaminectomy, trochanteric bursitis of bilateral hips,

sacroiliac osteoarthritis, major depressive disorder, generalized anxiety disorder, attention-deficit hyperactivity disorder, post-traumatic stress disorder, obsessive-compulsive personality disorder, and insomnia. R. at 15-28. Additionally, the ALJ found Plaintiff has the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b), with the following additional limitations:

> [L]ifting 20 pounds occasionally and 10 pounds frequently; carrying 20 pounds occasionally and 10 pounds frequently; sitting for 6 hours, standing for 6 hours, and walking for 6 hours of an 8 hour day. The claimant can climb ramps and stairs occasionally, climb ladders, ropes, or scaffolds occasionally, stoop occasionally, kneel occasionally, crouch occasionally, and crawl occasionally. The claimant can work at unprotected heights occasionally, moving mechanical parts occasionally, and in vibration occasionally. The claimant is able to perform simple, routine and repetitive tasks but not at a production rate pace. The claimant is able to interact with supervisors occasionally, interact with coworkers occasionally, and have occasional, brief, and superficial contact with the public. She should not have contact with the public as a requirement for the job. She is able to make simple work-related decisions.

R. at 21. Based on his review of the record, the RFC determination, and the hearing testimony, the ALJ concluded Plaintiff could work as a mail clerk, router, or collateral machine operator, and therefore, is not disabled. R. at 27-28. Plaintiff appealed the ALJ's decision to the Social Security Administration's Appeals Council, which denied her appeal. R. at 1-3, 183-85. She now appeals to this Court. Doc. 1.

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's decision is a limited inquiry into whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Turpin v. Colvin*, 750 F.3d 989, 992-93 (8th Cir. 2014). This Court must affirm the Commissioner's decision if it is supported by substantial evidence in the record as a whole. *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016). The threshold for such evidentiary sufficiency is not high. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence

is less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion." *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (citation omitted).

"As long as substantial evidence in the record supports the Commissioner's decision, [a reviewing court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). In evaluating for substantial evidence, a court must consider evidence supporting the Commissioner's decision as well as evidence detracting from it. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2015) (citation omitted). "If, after reviewing the entire record, it is possible to draw two inconsistent positions, and the Commissioner has adopted one of those positions, [the Court] must affirm." *See id.* (citation omitted).

## III. DISCUSSION

Plaintiff's appeal focuses on the ALJ's RFC determination. *See* Doc. 6. One's RFC is the "most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ must base the RFC on "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The RFC "must be supported by some medical evidence" but does not need to "be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

### A. Physical Limitations in the RFC

Plaintiff contends the RFC's physical limitations are not supported by substantial evidence because the ALJ improperly discounted her subjective complaints about her fibromyalgia symptoms. Doc. 6 at 1, 7-13. When evaluating a claimant's subjective complaints, the ALJ "must

3
Case 5:21-cv-06122-WBG   Document 15   Filed 02/01/23   Page 3 of 12

consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions." *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), and 20 C.F.R. § 404.1529(c)). The ALJ is not required to discuss each of these factors. *Id*. (citation omitted). Further, the "ALJ may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'" *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (citation omitted).

A reviewing court does not reweigh the evidence before the ALJ. *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016) (citation omitted). And this Court must "defer to the ALJ's determinations regarding" a claimant's subjective complaints, "so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citation omitted); *see also Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021) (deferring to the ALJ's credibility determination of the claimant's subjective complaints related to fibromyalgia). This is because determinations about credibility "are the province of the ALJ," and therefore, this Court "will not substitute its opinion for the ALJ's, who is in a better position to gauge credibility and resolve conflicts in evidence." *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018) (citations omitted).

**(1)    The ALJ's Consideration of Plaintiff's Subjective Complaints**

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and

4
Case 5:21-cv-06122-WBG   Document 15   Filed 02/01/23   Page 4 of 12

other evidence in the record . . . ." R. at 22. To reach his conclusion, the ALJ relied on objective medical evidence, treatment notes, examinations, and function reports, which did not support Plaintiff's "central allegations of debilitating pain." *Id*. at 22-25. With regard to objective medical evidence, the ALJ noted Plaintiff's December 2017 hip x-ray revealed only minimal degenerative changes; her September 2019 MRI of her left lip was largely unremarkable; the 2019 imaging of her lumbar spine was "mixed," ranging from being fairly unremarkable to showing moderate to severe degenerative disc disease at L4 to L5; and a whole-body bone scan indicated "[n]o abnormally increased uptake involving the hips and increased uptake limited to the left aspect of the L4 vertebral body." R. at 22-23 (citing R. at 348 (B1F/2), 726-27 (B15F/1-2), 731-32 (B15F/6-7), 888-89 (B31F/20-21)). The ALJ also cited negative laboratory data. R. at 23 (citing R. at 436-39 (B3F/74-77), 447 (B3F/85), 478-516 (B5F), 840 (B26F/5)).

The ALJ also observed medical providers' treatment notes were inconsistent with Plaintiff's subjective complaints. R. at 23. The ALJ noted some treatment notes described occasional tenderness, weakness of the left lower extremity, tender points, positive left straight leg raises, antalgic gait, and difficulties with orthopedic maneuvers, but also "routinely reveal[ed] normal spine alignment, no joint deformities, no edema, normal sensory and vascular examination distally, negative straight leg raise testing, no palpable muscle spasms, good coordination, proper muscle tone, intact reflexes, a steady gait, and full strength and range of motion in all joints and extremities." *Id*. (citing R. at 352-62 (B2F), 481 (B5F/4), 503 (B5F/26), 508-09 (B5F/31-32), 691 (B12F/6), 694-95 (B13F/1-2), 836-41 (B26F), 858 (B29F/6), 880 (B31F/12), 914-15 (B32F/23-24)).

In addition, the ALJ cited Plaintiff's "largely unremarkable" specialized examinations. R. at 23 (citation omitted). While medical providers denoted Plaintiff's reduced neck rotation and

lumbar flexion, tender hands and wrists, fourteen trigger points, and hypoactive reflexes, the medical providers also stated Plaintiff had "normal flexion and extension" in her neck, full range of motion in her hips and knees, no tenderness in her feet and ankles, and no nodules, synovitis, cyanosis, clubbing, edema, or vasospasm. R. at 23 (citing R. at 420-21 (B3F/58-59), 836-41 (B26F)). Also, the ALJ observed Plaintiff's August 2019 neurological examination was "entirely normal with no positive signs observed." *Id.* (citing R. at 914-15 (B32F/23-24)). He also noted that if Plaintiff, as alleged, is "unable to stand, walk, sit . . . or lie down" more than five to fifteen minutes due to "severe, chronic pain," "one would not expect to see so many findings of no acute distress and normal gait upon exam." R. at 23.

The ALJ also recognized Plaintiff's treatment has been conservative. R. at 24. He observed that although Plaintiff has been prescribed several oral medications for pain, she has not been prescribed narcotics or opioids. *Id*. Additionally, she has not inpatient treatment, invasive pain-relieving treatments, surgeries, or lengthy hospitalization. *Id.*

Finally, the ALJ considered function reports when discounting Plaintiff's subjective complaints about her fibromyalgia symptoms. R. at 25. The function reports, which were executed by Plaintiff and her husband, represent Plaintiff is able to prepare simple meals, do light household chores, drive, shop, and take care of herself. R. at 25 (citing 243-51 (B5E), 252-65 (B6E)). These activities are not entirely consistent with Plaintiff's subjective complaints. R. at 22, 25.

### (2) Social Security Ruling 16-3p

Plaintiff argues the ALJ violated Social Security Ruling ("SSR") 16-3p by discounting her allegations based on inconsistencies that did not exist. Doc. 6 at 1, 8-9. SSR 16-3p clarifies how an ALJ examines a claimant's subjective complaints. Soc. Sec. Admin., Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2017 WL 5180304, *1-13 (Oct. 25,

2017).  Pursuant to SSR 16-3p, an ALJ may not "make a single, conclusory statement" about a claimant's subjective complaints.  *Id*. at *10.  Instead, an ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."  *Id.*

As set forth above, the ALJ provided detailed explanations as to why he found Plaintiff's subjective complaints were not entirely consistent with the record.  *See supra*, section III(A)(1).  Furthermore, the ALJ clearly articulated the bases for his decision and cited portions of the record, which included objective medical evidence, treatment notes, examinations, and functions reports.  *See id*.  Contrary to Plaintiff's argument the ALJ did not violate SSR 16-3p.

### (3)      Social Security Ruling 12-2p

Plaintiff also contends the ALJ failed to adhere to SSR 12-2p when he evaluated Plaintiff's fibromyalgia.  Doc. 6 at 9-13.  SSR 12-2p describes and identifies what evidence is necessary to establish a medically determinable impairment of fibromyalgia.  Soc. Sec. Admin., Titles II and XVI: Evaluation of Fibromyalgia, SSR 12-2p, 2012 WL 3104869, at *1-5 (July 25, 2012).  Here, the ALJ found the evidence in the record established Plaintiff has a medically determinable impairment of fibromyalgia.  R. at 18.

Although Plaintiff's argument suggests otherwise, SSR 12-2p does not address in-depth how an ALJ evaluates a claimant's subjective complaints.  The ruling refers to the two-step process set forth in the regulations and in SSR 96-7p for evaluating subjective complaints.  2012 WL 3104869, at *5.  SSR 96-7p, however, was superseded by SSR 16-3p.  2017 WL 5180304, at *1.  And, as explained above, the ALJ did not violate SSR 16-3p.  *See supra*, section III(A)(2).

7

Case 5:21-cv-06122-WBG    Document 15    Filed 02/01/23    Page 7 of 12

Although fibromyalgia can be a severe and chronic condition, not every diagnosis of fibromyalgia automatically entitles a claimant to disability benefits. *See Grindley,* 9 F.4th at 629. Where a claimant makes statements concerning symptoms caused by fibromyalgia, the ALJ is still required to evaluate the claimant's subjective complaints under the *Polaski* factors. *See id.* at 630. Where a claimant's subjective statements concerning the symptoms of fibromyalgia are "inconsistent with objective record evidence as a whole," an ALJ may discount the claimant's subjective statements. *Id.* at 631 (citation omitted). And a reviewing court must defer to the ALJ's credibility determination of a claimant's subjective complaints. *Id*. at 630.

Here, the ALJ found fibromyalgia was a severe impairment. R. at 18. The ALJ also acknowledged Plaintiff's significant functional limitations when he determined an RFC of light work with multiple additional limitations. R. at 21-26. In evaluating Plaintiff's symptoms, the ALJ's decision detailed objective medical evidence, examination observations, treatment notes, conservative treatment history, and function reports. R. at 22-25. And the ALJ explained why this evidence was inconsistent with Plaintiff's subjective complaints related to the severity of her symptoms. *Id*. The ALJ's decision to discount Plaintiff's subjective complaints was based on the objective record evidence as a whole, including objective medical evidence, treatment notes, examinations, and function reports executed by Plaintiff and her husband. The ALJ's opinion was "clear enough to allow for appropriate judicial review." *Grindley*, 9 F.4th at 631 (citation omitted). Accordingly, his decision to discount Plaintiff's subjective complaints is supported by substantial evidence.

B.   **Mental Limitations in the RFC**

Plaintiff contends the mental limitations in the RFC are not supported by substantial evidence because the ALJ failed to correctly account for her limited ability to adapt in the

workplace.  Doc. 6 at 1, 13-19.  She argues the ALJ failed to support the mental limitations with "some medical evidence," the record supports a greater limitation in her ability to adapt, and the ALJ improperly relied on normal mental status examinations and conservative treatment.  *Id*. at 13-19.

**(1)       The ALJ's Determination Regarding Plaintiff's Ability to Adapt**

The ALJ found Plaintiff was moderately limited "in her ability to adapt or manage herself." R. at 20.  In reaching this determination, he observed that, although Plaintiff reported difficulty managing her mood, she could "handle self-care and personal hygiene," had normal mood and affect during medical appointments, had no problems with temper control, could "navigate[ ] her home and community safely and without professional assistance," and was "able to manage her healthcare."  R. at 20, 23-26 (citing portions of 243-51 (B5E), 252-65 (B6E), 455-77 (B4F), 576-685 (B11F), 694-722 (B13F), 747-50 (B17F), 751-64 (B18F), 869-91 (B31F), 892-929 (B32F), 930-35 (B33F)).[1]

The ALJ also considered medical opinions rendered by a consultative examiner and a state agency psychological consultant. R. at 24-25 (citing 71-90 (B1A), 686-93 (B12F)).  He discounted the consultative examiner's opinion because it was "not well-supported or consistent with the record," including Plaintiff's treating psychiatrist's observations and records  R. at 25.  The ALJ also noted Plaintiff's behavior during the only meeting with the consultative examiner "was not entirely consistent with the behavior others observed."  *Id*.

With regard to the psychological consultant's opinion, the ALJ concluded the opinion was "supported by a longitudinal assessment of documentary evidence, a written narrative, and a

---

[1] The records cited by the ALJ contain a psychiatric diagnostic evaluation, psychiatric examinations, psychiatric treatment notes, records from Plaintiff's primary care physician, and function reports submitted by Plaintiff and her husband.

function-by-function assessment of specific work-related activities." *Id*. Accordingly, the ALJ found the psychological consultant's opinion was persuasive to the extent it was consistent with the RFC. *Id*.[2] Based on his review of the record, the ALJ included several mental limitations in the RFC, limiting Plaintiff to performing simple, routine, and repetitive tasks but not at a production rate pace; occasional interaction with coworkers and supervisors occasionally; "occasional, brief, and superficial contact with the public"; and "simple work-related decisions." R. at 21.

**(2)     Medical Evidence**

Plaintiff contends the RFC's mental limitations are not supported by some medical evidence. Doc. 6 at 18. Yet, in her brief, she concedes the ALJ "relied on the objective findings" and partially relied on a medical opinion when assessing the RFC's mental limitations. *Id*. at 14-16. Moreover, as described above, the ALJ detailed medical evidence – i.e., medical opinions, psychiatric diagnostic evaluation, psychiatric examinations, and treating psychiatrist's notes – to support the mental limitations in the RFC. *See supra*, section III(B)(1).

**(3)     Record Support for Greater Limitation**

Plaintiff also maintains the record establishes her ability to adapt in the workplace is more restricted than the limitations in the RFC. Doc. 6 at 13-18. In support, she cites her hearing testimony and function report, the agency psychological consultant's opinion, the consultative examiner's opinion, her psychiatrist's treatment notes, therapy notes, and the psychiatric

---

[2] The ALJ found the psychological consultant's findings related to the paragraph B criteria were less persuasive because they were inconsistent with treatment records, examinations, and Plaintiff's reported activities. R. at 25. The paragraph B criteria, as explained by the ALJ, relates to whether Plaintiff meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 18, 21. The ALJ further clarified the "paragraph B criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." R. at 21. "The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions . . . ." *Id*. Plaintiff does not argue the ALJ failed to find she met or was medically equal to a listed impairment. As such, the psychological consultant's findings related to the paragraph B criteria are irrelevant.

diagnostic evaluation. *Id.* (citing 58, 86-87, 261, 437, 456, 459, 488, 576, 691-92, 752-60, 871, 933-34).[3] With the exception of the one page cited from the hearing transcript, the aforementioned portions of the record were considered by the ALJ and referenced in his decision. *See* R. at 20-25. Specific to the opinions of the agency psychological consultant and the consultative examiner, the ALJ discussed the opinions and detailed his assessment of the opinions' persuasiveness. *Id*. at 20, 24-25. The ALJ also examined records from Plaintiff's treating psychiatrist and detailed the portions of the record that were inconsistent with the treatment notes. *Id*. at 24-25.[4]

There may be evidence in the record that could support a greater limitation regarding Plaintiff's ability to adapt. But the existence of evidence supporting a greater limitation does not require this Court to remand the matter. In this appeal, the Court, after reviewing the record, must determine whether a reasonable mind would find the evidence adequate to support the ALJ's conclusion. *See Noerper*, 964 F.3d at 744. After carefully considering the record, the Court finds a reasonable person would find the evidence in the record adequately supports the ALJ's decision.

**(4) Normal Mental Health Examinations and Conservative Treatment**

Finally, Plaintiff alleges the ALJ, when determining the mental limitations in the RFC, improperly relied on "some normal mental status examination findings" and her conservative treatment. Doc. 6 at 16-18. The ALJ did not rely solely on normal mental status examinations or those times when Plaintiff's mental health symptoms were best. *See* R. at 24-25. Rather, he acknowledged medical providers' differing observations of Plaintiff's mental status and at least

---

[3] Plaintiff also cites a laboratory report; however, its relevance is unclear. Doc. 6 at 18 (citing R. at 437).

[4] With regard to Plaintiff's mental limitations, the ALJ also considered the function reports executed by Plaintiff and her husband. R. at 20, 24-25. Both Plaintiff and her husband reported she had no problem getting along with authority figures, such as bosses. R. at 249, 260. Although Plaintiff reported she only "sometimes" handled changes in her routine "fine," her husband said she had "[n]o problems" handling changes in her routine. R. at 250, 261. Plaintiff and her husband were also inconsistent regarding her ability to get along with others – Plaintiff said she had difficulties getting along with others, but her husband said she had no problem getting along with others. R. at 248, 259.

one instance when her mental symptoms worsened. *Id*. When medical evidence, including Plaintiff's mental health examinations, conflicted, the ALJ properly resolved the conflict. *See Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted) ("It is the ALJ's task to resolve conflicts in the evidence and issues of credibility.").

The ALJ also observed Plaintiff's mental health treatment was conservative, noting her conditions were managed with medication, she never required hospitalization, and she "only recently followed her treating psychiatrist's recommendations that she pursue therapy." R. at 24. Conservative treatment plans and resistance to treatment undermine a claim of severe disabling conditions and, therefore, may be considered by the ALJ. *See Swarthout v. Kijakazi*, 35 F.4th 608, 612 (8th Cir. 2022). Although, based on the Court's review of the ALJ's decision, it does not appear Plaintiff's conservative treatment was a basis for the RFC's mental limitations associated with Plaintiff's ability to adapt, the ALJ was permitted to consider such evidence.

## IV.   CONCLUSION

The Court finds the ALJ's RFC is supported by substantial evidence in the record as a whole. Accordingly, the Acting Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

DATE: February 1, 2023             */s/ W. Brian Gaddy*
                                   W. BRIAN GADDY
                                   UNITED STATES MAGISTRATE JUDGE